In re Johnson Express Company, Insolvent, Louis P. Daniel, Assignee, Appellee, v. First National Bank of Englewood, Appellant.

## Gen. No. 15,514.

PLEDGES—*what covered by collateral note.* A collateral note specific as to a particular obligation but general as to all obligations due from the maker of the pledge, covers obligations of the pledgor in the hands of or held by the pledgee at the time of its delivery.

Appeal from the County Court of Cook county; the Hon. LEWIS RINAKER, Judge, presiding. Heard in this court at the March term, 1909. Reversed and remanded with directions. Opinion filed February 16, 1911.

**Statement by the Court.** The Johnson Express Company made and delivered to the appellant bank its promissory note for $20,000, payable to the bank, dated September 13, 1905, and executed a trust deed of that date conveying to Nicholas, trustee, certain real estate to secure the payment of said note which was recorded October 4, 1905. The Express Company made and delivered to the bank its promissory note of the same date for $10,000, and delivered the note for $20,-000 to the bank as collateral security for said note. The Express Company made and delivered to Schuyler Stratton a series of notes amounting to $2,000, dated

September 1, 1906. September 27, 1906, Johnson, the president of the Express Company, wrote Nicholas, the vice-president of the bank, as follows: "This will introduce to you Mr. Schuyler Stratton, formerly part owner of the James Express Company, which we have recently purchased, and who holds part of our notes." On receiving this letter the bank bought said notes of Stratton and a few days later Nicholas told Johnson that the bank had bought said notes. September 13, 1907, the note for $10,000 dated September 13, 1905, was surrendered to the Express Company and the Company gave to the bank a new note of that date for $15,000, payable to the bank. The terms of this note are stated in the opinion. October 22, 1907, the Express Company made a voluntary assignment for the benefit of creditors to Louis P. Daniel, assignee. October 25, 1907, the County Court entered an order directing the assignee to sell at public auction the real estate described in the trust deed of September 13, 1905, subject to the approval of the court and subject to the lien of said trust deed deposited with the appellant bank as collateral security for an alleged indebtedness to said bank in the sum of $16,830.41. Pursuant to said order the assignee sold said property to Ward and Bryant, the sale was confirmed, and afterwards the Illinois Express Company became the owner of said real estate. March 10, 1908, the assignee filed in the County Court a petition setting up the facts above stated, alleging that the bank was not entitled to a lien for the full sum of $16,830.41, but that its lien was at least $1,299 less than said sum; that said sum of $16,-830.41 was due from the Illinois Express Company, and that out of said sum petitioner as assignee was entitled to at least $1,299. This $1,299 was the amount remaining due on the Stratton note purchased by the bank in September, 1907. The County Court ordered that the Illinois Express Company pay the sum of $16,830.41, less any payments that may have been made on account of said sum since November 4, 1907, as follows:

"1.   To the First National Bank of Englewood, $15,531.41 (less payments on account thereof, as aforesaid), with interest that may have accrued thereon under the terms and conditions of the notes and documents offered in evidence by said bank.

"2.   To Louis P. Daniel, assignee, petitioner herein, as a part of said insolvent's estate, the sum of $1,299."

From this order the bank prosecutes this appeal.

WILLIAM A. DOYLE, for appellant.

LAMBORN & GUERNSEY and M. F. CURE, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

The note of the Express Company of September 13, 1905, was surrendered to the maker when the new note of September 13, 1907, was given to the bank.   The $20,000 note secured by trust deed was then in the possession of the bank and it could be pledged by the Express Company to the bank for one or many debts, liabilities or engagements, without a redelivery.   The contract of pledge is express, and its provisions are contained in the note of September 13, 1907, and the right of the parties depend on the contract of pledge thus made.   The note of September 13, 1907, recites that the Express Company had deposited with the bank the note for $20,000 as collateral security for the payment of said note, "and for the payment of other liability or liabilities   *   *   *   of the undersigned (the maker)   *   *   *   to said payee."   It gives the bank the power to sell the collateral and to apply the proceeds thereof "to the payment of this note and other obligations above mentioned."   When the new collateral note was given the bank was and for nearly a year had been the owner of the Stratton notes, and the Express Company, through its president, knew that the bank was the owner of said notes.   They were clearly liabilities of the Express Company, the maker of the collateral note to the bank, the payee.   We think

that the contract of pledge and the facts and circumstances surrounding the transaction show that the Express Company intended to pledge the $20,000 note as security for the amount due to the bank from the Express Company on the Stratton notes as well as for the amount due to the bank from the Express Company on dealings between the bank and the Express Company. We think that the case of Gillet v. Bank of America, 160 N. Y. 549, relied on by appellee, is to be distinguished from this case on the facts. In that case the bank after the pledge purchased a dishonored note of the pledgor, and it was held that such purchase was not a transaction in the ordinary course of the business of the bank and the bank was not entitled to retain the pledged property for the purpose of applying it on the note so purchased. In this case the bank was the holder of the Stratton notes when the $20,000 note was pledged to it by the Express Company. We think the County Court erred in ordering that $1,299, or any other sum, be paid to the assignee of the Express Company.

The order of the County Court will be reversed and the cause remanded with directions to enter an order or decree in accordance with the views herein expressed.

*Reversed and remanded with directions.*